AO 91 (Rev. 02/09) Criminal Complaint

# United States District Court
### for the
### Western District of New York

| | |
|---|---|
| United States of America<br>v.<br>**ISRAEL ENDEN**<br>*Defendant* | Case No. ? 26-mj-5014 |

*[Stamp: FILED JAN -8 2026 MARY C. LOEWENGUTH, CLERK WESTERN DISTRICT OF NY]*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of January 8, 2026, in the Western District of New York, the defendant, **ISRAEL ENDEN**, violated Title 8, United States Code, Section 1324(a)(1)(A)(II) as follows:

The defendant did aid and abet an alien to come to, enter, or reside in the United States, knowing that such coming to, entry, or residence is or would be in violation of law, in violation of Title 8, United States Code, Section 1324(a)(1)(A)(II).

This Criminal Complaint is based on these facts:

☒ Continued on the attached sheet.

*Digitally signed by MATTHEW F MASTRORILLI*
*Date: 2026.01.08 19:46:0 -05'00'*

_____
*Complainant's signature*

MATTHEW MASTRORILLI
SPECIAL AGENT
HOMELAND SECURITY INVESTIGATIONS
*Printed name and title*

Sworn to before me and signed telephonically.

Date: January 8, 2026

8:02 PM, Jan 8, 2026

City and State: Buffalo, New York

_____
*Judge's signature*

HONORABLE MICHAEL J. ROEMER
UNITED STATES MAGISTRATE JUDGE
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

STATE OF NEW YORK    )
COUNTY OF ERIE        ) SS:
CITY OF BUFFALO       )

Matthew Mastrorilli, being duly sworn, deposes and states:

1. I have been a sworn Federal Law Enforcement Officer since June 2008. I am currently employed as a Special Agent ("SA") with the U.S. Department of Homeland Security, Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI"), Buffalo, New York. I have been employed by HSI since August 2022. I am currently assigned to the HSI Buffalo Border Enforcement and Security Task Force ("BEST"), an HSI-sponsored law enforcement task force comprised of local, state, federal, and Canadian law enforcement officers co-located in Buffalo, New York, and tasked with combating transnational criminal organizations ("TCOs") that exploit vulnerabilities of the shared international border. As such, I am a law enforcement officer of the United States, within the meaning of Title 18, United States Code, Section 115(c)(1), who is "authorized by law or by Government agency to engage in or supervise the prevention, detention, investigation or prosecution of any violation of Federal criminal law."

2. As a Special Agent, I attended the Federal Law Enforcement Training Center ("FLETC") completing the Criminal Investigator Training Program ("CITP") and HSI Special Agent Training ("HSI SAT"). During this training, I received detailed instruction, both academic and practical application, in the areas of informant handling/debriefing, drug

packaging, pricing, importation, and trafficking methods. In addition, I received both academic and practical application training in surveillance and counter surveillance techniques/methods. I received legal instruction in Federal drug conspiracy and firearm laws, preparing drug and firearm affidavits, the Controlled Substances Act, Fourth Amendment Searches and Seizures, Federal Rules of Evidence, and the execution of search warrants. Prior to being a Special Agent, I was employed by the United States Custom and Border Protection (CBP), port of Buffalo, NY. I completed their basic law enforcement academy at the Federal Law Enforcement Training Center (FLETC), Glynco, GA, focusing on Title 8 and 19. I served as a Federal Officer in Buffalo, NY from June 2008 through July of 2009. In 2009, I accepted a position with the United States Border Patrol (USBP). I completed their basic Law Enforcement Training Program at FLETC Artesia, New Mexico and was assigned to the Southern Border of Mexico and The United States, in Del Rio, TX. There, I served as a Patrol Agent, focusing on disrupting and dismantling Transnational Criminal Organizations (TCOs) by conducting line watch, roving patrols, and interdiction assignments. In 2010, accepted a transfer to the Northern Border of Canada and The United States, in Buffalo, NY, where I was part of the training Unit specializing in defensive tactics, Firearms and Intermediate force from 2010 to 2017. In 2017, I successfully passed and was selected to become part of the Border Patrol's tactical unit within the Border Patrol's Special Operations Group (BORTAC). This unit specializes in close-quarters combat, entry tactics, special weapons/tactics, and high-risk warrant services. While part of the Special Operations Group (BORTAC), I surveilled, investigated, and arrested high risk targets to include, members of Transnational Criminal Organizations ("TCO"), human smugglers and Child exploitation suspects amongst other high-risk targets. During this time, I have interviewed defendants, witnesses, and

informants relative to the illegal possession and trafficking of controlled substances and firearms. Through my training and experience, I have gained a working knowledge and insight into the normal operational habits of narcotics and firearms smugglers, with particular emphasis on those who attempt to import and traffic narcotics and firearms into and throughout the United States. My investigative experience detailed herein, as well as the experience of other law enforcement agents who are participating in this investigation, and information provided to me by cooperating sources, serve as the basis for the opinions and conclusions set forth herein.

3. During my law enforcement career, I have participated in numerous cases involving the distribution of narcotics and possession of illegal firearms. I have participated in successful investigations into illicit drug distribution networks. I am familiar with how controlled substances and firearms are obtained, diluted, packaged, distributed, sold and used within the framework of drug trafficking and how drug traffickers use their persons and personal property to facilitate their illegal activities.

4. Your affiant is submitting this affidavit in support of a criminal complaint charging ENDEN, Israel with violating Title 8, United States Code, Section 1324(a)(1)(A)(II) (Bringing in and harboring certain aliens).

5. I am familiar with all aspects of this investigation as a result of my participation in this investigation, as well as conversations with other law enforcement officers, and review of documents and records obtained by HSI Agents and United states Customs and Border

Protection (CBP) Officers. Since this affidavit is being submitted for the limited purpose of obtaining a criminal complaint, I have not included every fact known to me concerning this investigation. I have set forth only the facts I believe are necessary to establish the required foundation for the requested complaint.

## PROBABLE CAUSE

6. On January 08, 2026, at approximately 1:15 a.m., while working at the Rainbow Bridge Port of Entry (POE) in Niagara Falls, New York. Customs and Border Protection Officers (CBPOs) encountered an Ontario-plated Ford Expedition (ON – DETK581) operated by ENDEN, Israel (hereinafter ENDEN) (DOB: 09/11/1979), (COB/COC: USA). The primary inspection was conducted by CBPO Pierini. ENDEN stated to CBPOs that he was a United States citizen (USC) who resides in Israel and was traveling to New York City to visit friends and family. When ENDEN was asked about the vehicle's ownership, ENDEN stated that his friend rented it for him, yet he could not produce any rental agreement with their name on it. Furthermore, when asked if ENDEN had anything to declare, such as alcohol, tobacco, food, guns, money or drugs, ENDEN replied, "No". Subsequently, the vehicle and ENDEN were referred for a secondary inspection due to having a third-party rental vehicle and an inconsistent story.

7. During the inbound inspection, ENDEN was removed from the vehicle and escorted to secondary by CBPO Melendez. CBPO Mack drove the vehicle from primary lane 16 to a secure area for inspection. During the secondary inspection, while lifting the hatch of the Ford Expedition, CBPO Mack noticed multiple pieces of luggage. As CBPO Mack started

4

to take a piece of luggage out of the trunk, she noticed what appeared to be a person's back. Other CBPOs were called and moved the remaining luggage out of the way. The CBPOs then found a person lying in the back of the trunk under the removed luggage. Subsequently, this subject was identified as: WIGDOROWITZ, Elazar, (hereinafter WIGDOROWITZ), DOB: 01/19/1992, COB/COC: Israel. WIGDOROWITZ was secured and transported into a processing area for further inspection.

8. During the secondary inspection CBPOs discovered Immigration history for WIGDOROWITZ. WIGDOROWITZ had obtained a visa in 2010, and it was revoked in 2017 due to his criminal history in Israel.

9. On January 8, 2026, at approximately 2:10 a.m. HSI was contacted via sector and responded to the Rainbow Bridge (RB) to conduct an interview of ENDEN, Israel. At approximately 3:00 a.m. Special Agent (SA) Mastrorilli arrived at the RB. At 3:51 a.m. SA Mastrorilli advised ENDEN of his Miranda rights in the English language. At 3:54 a.m. ENDEN, Israel waived his rights by signing and agreeing to answer the Agents questions. This interview was audio recorded on SA Mastrorilli's SONY recording device serial number: 1264502.

10. SA Mastrorilli commenced the interview with basic biographical information of ENDEN, including his travel history and how he ended up at the RB POE on January 8, 2026. ENDEN stated he flew into Toronto from Warsaw, Poland, and was planning on visiting family and clients in New York City. ENDEN disclosed that a friend named

DRAIMAN, Israel (hereinafter DRAIMAN) had rented the vehicle for him to drive to the United States. ENDEN stated that while he was seated in the driver's seat, DRAIMAN WIGDOROWITZ, and other unidentified friends loaded the vehicle with luggage, but he did not participate. ENDEN also stated that WIGDOROWITZ, DRAIMAN, and he were on the same flight from Poland to Toronto, but did not sit together. EDEN further stated that DRAIMAN crossed the RB in a taxicab moments before ENDEN and WIGDOROWITZ were sent to secondary inspection. Furthermore, the luggage in the back of the Ford Expedition used to conceal WIGDOROWITZ appears to belong to DRAIMAN, WIGDOROWITZ and ENDEN.

11.  SA Mastrorilli continued the interview in the English language, asking ENDEN who the person in the back of the vehicle was. EDEN identified WIGDOROWITZ, yet stated, "I didn't know he was in the car" and "didn't know he had an issue coming to the United States." He also stated, "I just saw him inside the CBP facility." Furthermore, ENDEN stated he was not paid to drive the vehicle or anyone into the United States. ENDEN also stated that he was supposed to meet up with another friend in Monroe County before he went to NYC. Under the totality of the circumstances, including the vehicle's size and interior layout, it would be unreasonable to believe the driver was unaware of another person inside the vehicle. Specifically, a person of WIGDOROWITZ's size. In my training and experiences, these factors are consistent with indicators of human smuggling even if ENDEN is stating otherwise.

12.   SA Mastrorilli then interviewed WIGDOROWITZ in the Hebrew language utilizing the Lionbridge translation service, reference number: 42608713, translator ID: 4700. SA Mastrorilli initially inquired about how WIGDOROWITZ got to the United States on the night in question and WIGDOROWITZ stated an Israeli/American friend named ENDEN drove him in a car. WIGDOROWITZ said he hid in the back of the vehicle because he wanted to visit his rabbi's grave in the United States and his visa is expired. WIGDOROWITZ also stated he didn't pay to be smuggled into the U.S. and said he couldn't say if ENDEN knew if he was in the vehicle or not. WIGDOROWITZ also stated that he did not think it was criminal, "but I was in the trunk because I knew they would not let me in without a visa". The interview concluded with WIGDOROWITZ stating he understands it was illegal to be smuggled into the U.S.

13.   Based on the above information, your affiant submits that probable cause exists to believe that Israel ENDEN, violated Title 8, United States Code, Section 1324 (Bringing in and harboring certain aliens).

MATTHEW F MASTRORILLI
Digitally signed by MATTHEW F MASTRORILLI
Date: 2026.01.08 19:47:27 -05'00'

MATTHEW MASTRORILLI
Special Agent
Homeland Security Investigations

Sworn and subscribed to before me telephonically
on this  8th  day of January 2026.

8:02 PM, Jan 8, 2026

_____
HONORABLE MICHAEL J. ROEMER
United States Magistrate Judge

7